CHARITON & LUCAS COUNTY NATIONAL BANK, Appellant, v. GENE WRIGHT et al., Appellees.

No. 43437.

OCTOBER 27, 1936.

418

J. W. Kridelbaugh, for appellant.

G. C. Stuart, for appellees.

KINTZINGER, J.—The defendants, Gene Wright and J. H. Robbins, were farmers, and for a number of years were engaged, as copartners, in buying, raising and selling cattle. They each owned a separate farm in Lucas county, Iowa. In the operation of their business, they frequently borrowed money from the Lucas County Trust & Savings Bank and the Chariton & Lucas County National Bank, both of Chariton, Iowa. The record shows that in May, 1928, they were indebted to both banks in the sum of $20,900. Of this amount they owed the Lucas County Trust & Savings Bank $6,000, and the Chariton & Lucas County National Bank $14,900.

In 1927 or early in 1928, these banks became uneasy about this indebtedness, and urged Robbins & Wright to give them security therefor. Pursuant to the banks' request, Robbins & Wright, by Gene Wright and J. H. Robbins, signed a note of $6,000 to the Lucas County Trust & Savings Bank, and one of $14,900 to the Chariton & Lucas County National Bank, which the evidence tends to show were dated August 27, 1927, but not delivered until May 24, 1928. They were given in renewal of the copartnership indebtedness which was thereby extended for four years from August 27, 1927. The extension of such indebtedness was the consideration for these notes and the mortgages given to secure the same. These notes of $6,000 and $14,900 were secured by separate mortgages executed by each partner and his wife on their separate farms; each partner securing one-half of such indebtedness as follows: Separate mortgages securing one-half the indebtedness to each bank were executed by each partner to the other, and then assigned by the respective partners and their wives to the banks, respectively, to secure the partnership debt. These mortgages were executed and delivered to the banks on May 24, 1928, on which date the banks claim the $6,000 note and the $14,900 note were also delivered.

One of the farms consisted of 276 acres of good, well-improved land in Lucas county, owned by Mr. Wright, and the other of 324 acres of good, well-improved land in Lucas county, owned by Mr. Robbins. Both farms were encumbered by a first mortgage, but the record shows without dispute that the equity of the copartners in these farms was sufficient to cover the indebtedness due both banks.

The note sued on in this action is one of $3,000, dated August 27, 1927, but was not signed and delivered until May 24, 1928. This note was signed by Mr. and Mrs. Wright, payable to Mr. and Mrs. Robbins, and endorsed by them in blank.

Appellant claims that the $3,000 note sued on was endorsed in blank and transferred to the Lucas County Trust & Savings Bank as collateral security for the indebtedness due that bank from the copartnership. The indebtedness due the Lucas County Trust & Savings Bank, as hereinabove stated, was $6,000, and that bank contends that each partner also secured that indebtedness by the execution of a $3,000 note by each of the partners to the other, which notes appellant claims were then assigned and delivered to the banks.

Appellant claims to have purchased this $3,000 note in question with other assets of the Lucas County Trust & Savings Bank, and now seeks to recover a judgment of $2,700 and interest for the balance due thereon.

As a defense to this action, appellees allege and contend that the note in question was never transferred or delivered to the Lucas County Trust & Savings Bank, as collateral, but allege that at the time this note was executed a similar note was executed by Mr. and Mrs. Robbins to Mr. and Mrs. Wright, and immediately endorsed in blank, and each note, including the one in question, was delivered back to the makers; that neither one of these notes was ever sold, assigned or delivered to the Lucas County Trust & Savings Bank or to the Chariton & Lucas County National Bank. Appellees allege that when these notes were executed, a separate agreement was entered into under which it was agreed that the sole purpose of executing these notes was for "the protection of the members of the partnership to prevent any heir of either of the partners from forcing an immediate settlement and sale of the partnership property in the event of the death of either of the partners."

Both Mr. Wright and Mr. Robbins positively deny the trans-

fer or assignment of these notes or any of them to either the Lucas County Trust & Savings Bank or the Chariton & Lucas County National Bank, as collateral security for the debt represented by the $6,000 note and the $14,900 note, which were secured by the mortgages hereinabove referred to and assigned to the Lucas County Trust & Savings Bank and the Chariton & Lucas County National Bank.

There is a sharp conflict in the evidence as to whether or not the note in question was, in fact, ever transferred, assigned or delivered to the Lucas County Trust & Savings Bank as collateral security for the indebtedness due that bank.

At the time the note in question, and the other notes given by each partner to the other, were executed, the partners rented a safety deposit box in the Lucas County Trust & Savings Bank, and deposited therein the note in question, together with the other notes executed by each partner to the other, so that either partner could withdraw his own note therefrom if they desired. The record shows that at the time this deposit box was rented, the banker told the partners that the bank had only one key thereto, and offered to deliver this key to either one of the partners. For convenience, however, it was agreed that the key be retained by the bank, so that each partner would have access to the box at any time he desired without the necessity of having the other present.

Both partners testify positively that the note in question in this action and the other notes executed by the partners to each other, and endorsed in blank, were placed in this deposit box, and were never withdrawn therefrom by either of them, and were never delivered to either of the banks. They also testify that the note in question was never delivered to the Lucas County Trust & Savings Bank.

Both partners say that nobody intended that the note in question or any of these notes was to be delivered to either of the banks, and ''that it was never even talked of''. Both partners testify they never knew these notes had been taken out of the safety deposit box *until after this action was commenced.*

True, there is testimony in the record from which the jury might find that appellant's contention is true. Likewise, there is ample testimony tending to show that the note in question was never, in fact, transferred to either of the banks referred to. Defendants contend that there was no delivery to the Lucas

County Trust & Savings Bank, and that they received no consideration from that bank for any transfer of the note in question.

■■■ This raises purely a question of fact, and the evidence on either side might be sufficient to support a verdict for either, but questions of fact in a law action are matters for the determination of the jury, and not of the court. So in this case these questions of fact were submitted to the jury in the lower court, and a verdict returned in favor of the defendants. Judgment was then rendered against plaintiff for costs. Hence the appeal.

I. Appellant contends that the note in question was one of a set of notes delivered to the Lucas County Trust & Savings Bank and the Chariton & Lucas County National Bank, for the purpose of securing an extension of the copartnership indebtedness to these banks. Appellant also contends that because the mortgages given to secure the aggregate indebtedness to both banks were executed on the same date, that it must be found, as a matter of fact, that the notes were also delivered to the banks. If appellant's testimony upon this point were undisputed, its contention would be correct.

The record, however, shows without dispute that the entire amount of the copartnership indebtedness to the banks *was secured by mortgages upon appellees' farms.* The aggregate of these mortgages was in the exact amount of the aggregate indebtedness to the banks, which was then represented by two copartnership notes of $6,000 and $14,900 then delivered to the banks. Appellant claims these notes were delivered to the banks on the same date on which these mortgages were executed.

Appellees contend that these latter notes and the real estate mortgages securing the same were the only papers delivered to the banks. This contention has substantial support in the evidence. Mr. Robbins testifies that neither of the mortgages referred to was given to secure the $3,000 note in question. On the contrary, he testified that the mortgages referred to were given to secure the $6,000 note in possession of that bank, and the $14,900 note in possession of the Chariton & Lucas County National Bank. Mr. Wright, the other partner, testified that he never delivered the note in question, or any of the other notes executed by each partner to the other, to the banks or to any officer of either bank; and says *it was never intended that these notes should get* into the hands of the banks, and that "it wasn't

even talked of''. The partners also testify that no member of the bank asked for any other security for the indebtedness due the banks, except the mortgages referred to.

Appellant contends that it was error to submit questions of fact to the jury upon which there was no dispute. This rule is correct, but the trouble with appellant's contention is that there was a sharp conflict in the evidence on the question of delivery, and the authorities cited to sustain the rule have no application.

We are, therefore, constrained to hold that there was sufficient evidence to warrant the submission of the question of delivery to the jury.

■■■ II. Appellant also complains of instruction No. 10 given to the jury as follows:

"Delivery is largely a matter of intention. Whenever the maker of a note, or the endorser thereof, places it in the hands of the payee, or in the possession or control of a third party for the benefit of the payee, with intention thereby to make his act effective, *the delivery is accomplished.*" (Italics ours.)

Appellant contends that:

"This instruction is erroneous for the reason that it is admitted that Jennie P. Robbins endorsed this note and placed it in the hands of J. H. Robbins. She had no part in dealing with the bank. She was not liable on the original indebtedness and signed as surety. If there was a delivery to the bank by J. H. Robbins her intentions are not material."

This objection is rather hypercritical. The delivery referred to in the instruction, if there was a delivery, was the delivery to the banks. This instruction is not prejudicial to appellant, because it also specifically tells the jury that "if the instrument be handed over to a third party under circumstances indicating a purpose to part with control over it, a delivery may be found, even in the absence of express instruction to pass it on." Therefore, if the jury had found, under the facts, that the note in question was delivered to the Lucas County Trust & Savings Bank, the delivery would be complete. This is substantially the meaning of the instruction, and we find no error therein.

■■■ III. Appellant also contends that the court erred in giving instruction No. 13, substantially as follows:

"If you find * * * said * * * Bank parted with nothing

*of value* for said note and defendants received no benefit for the execution, endorsement and delivery, if any, of said note to said Lucas County Trust and Savings Bank, then there would be a failure of consideration * * * as between * * * defendants and said * * * Bank, * * and, in such case, your verdict should be for the defendants, * * *.

"But if you * * * find that said note was executed, endorsed and delivered by the defendants to the Lucas County Trust and Savings Bank as collateral security to an indebtedness owing said bank by Robbins & Wright, then there was a valuable consideration for such execution, endorsement and delivery * * * and your verdict should be for the plaintiff."

Appellant contends that this instruction is erroneous for the reason that "when the defendants Wright & Robbins admitted that they wanted and received an extension of time * * * there is no longer any question of receipt of value for the jury to determine".

Here again appellant assumes that because there was an extension of time granted, that the extension was granted in consideration for the note in question, which appellant also *assumes* was delivered to said banks. The evidence shows, however, that two other partnership notes were executed and delivered to the banks in question in the sum of $6,000 and $14,900 as a renewal of the entire indebtedness due the banks, and the testimony also shows that these two notes, constituting the entire indebtedness to the banks, were secured by mortgages upon the separate farms owned by the copartners, and that the execution of these notes and the mortgages securing the same was the only consideration for the extension of the indebtedness.

The trouble with appellant's contention here also is that the facts are not undisputed, but there is evidence in the record, as disclosed by the facts heretofore set out, that there was no delivery of the note in question to the bank, and that none of the defendants received any consideration therefor.

There was evidence in this record from which the jury could find that the note in question and the other notes payable to the partners were executed for the "protection of the members of the partnership to prevent any heir of either of the partners from forcing an immediate settlement and sale of the partnership property in the event of the death of either of the part-

ners,'' and that the note in question was not given the banks as collateral security for the $6,000 and $14,900 notes hereinabove referred to, but that the latter notes were secured by mortgages on the partners' real estate. We find no error in the giving of this instruction.

■■■ IV. Appellant also complains of instruction No. 17. In this instruction the court said:

''To constitute notice of a defect in the title of the person negotiating an instrument, the person to whom it is negotiated must have had actual knowledge of such defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. * * *

''The burden is upon plaintiff herein, if defendants have established want of delivery of said note by them to the Lucas County Trust and Savings Bank, or want of consideration by said Lucas County Trust and Savings Bank to them therefor, to establish by the greater weight or preponderance of the evidence that at the time it acquired title thereto it had no notice of such defect in the title thereto, if any defect existed.''

In previous instructions the court instructed the jury that the appellant purchased the note sued upon from the Lucas County Trust & Savings Bank before it was due; it also instructed the jury that it purchased the note for value. It also instructed the jury that if they found that the note was delivered by the members of the copartnership to the banks in question, then it was their duty to return a verdict for the plaintiff. The court also instructed that if the defendants have established by the greater weight of the evidence that the note had not been delivered to the banks, or that there was a failure of consideration therefor, then they should inquire into the question as to whether or not the appellant was a ''holder in due course''.

Appellant contends that the giving of this instruction was error because it submitted a question to the jury upon which there was no dispute. From the conclusion reached in the preceding part of this opinion, it will be seen that there was a dispute in the evidence upon all the questions raised.

It may also be said that no proper exception to this instruction was made, and it, therefore, becomes the law of the case.

Error is also alleged because of the giving of other instructions to the jury. We have examined and given careful consid-

eration to all of such instructions, and find no merit. in the errors complained of therein.

For all of the reasons hereinabove expressed, we are constrained to hold that the case was properly submitted to the jury, and the judgment of the lower court is, therefore, hereby affirmed.—Affirmed.

PARSONS, C. J., and ALBERT, DONEGAN, HAMILTON, and RICHARDS, JJ., concur.